Good morning, Council. We have one case that we're going to hear this morning, and that will be Rogers v. Superintendent Greene SCI. And we'll start with Council for appellant Nelson Majure. Ms. Nelson Majure. Did I pronounce that correctly? Nelson Majure is my last name, Hayden Nelson Majure. Very good. Thank you. Good morning, and may it please report, my name is Hayden Nelson Majure. Along with my colleague, Catherine Thompson, I represent Ronald Rogers, the appellant in this matter. If I may, I would request to reserve two minutes for rebuttal. Granted. Thank you. The single most important issue at Mr. Rogers' trial was whether Mr. Rogers or Demetrius Hayes fired the first shot. However, Council remained silent when the trial judge threatened to imprison Tyrone Singleton, the Commonwealth's key witness, when he testified that it had been Mr. Hayes and not Mr. Rogers who fired first. Had Council been reasonably effective and adequately responded to what the Superior Court found to be an improper threat by the trial court, there's a reasonable probability that the jury would have harbored reasonable doubt at the conclusion of the trial. Well, we can talk about prejudice a little later, but let's talk about the first strickling prong. And here we have to be doubly deferential. We've got state Superior Court's determination that this was a strategic decision. So even if there was a fundamental mistake of law, if Connors had other reasons for the decision not to object to the judge's admonition, not to cross-examine, why shouldn't we be deferential as to, at a minimum, the state court's appreciation of that being a strategy? I agree that trial counsel testified that going into trial he had a general strategy of crediting Summers over the testimony of Singleton. However, objecting to the admonishment was not inconsistent with that strategy. Had Council objected and the trial court cut short that admonishment, the prosecution would have been forced to cross-examine Mr. Singleton in an attempt to elicit the version of events that it supported its case. So in that way, objecting would have forced the Commonwealth to undermine the credibility of its own witness further in the eyes of the jury. And furthermore, blind adherence to that overall strategy was objectively unreasonable in light of how Ms. Summers testified at both the Hayes trial and Mr. Rogers trial. She testified that at the time the shooting began, she had actually been looking down and therefore didn't see who had fired the first shot. And then when she looks up, she sees a shot being fired from the vehicle. She did allow that at the time of the incident in her police statement. She had said that she had actually viewed who shot first, but the testimony didn't come in as compelling as perhaps Council had expected. And as this Court recognized in Workman v. S.C.I., Superintendent of S.C.I. Albion, to be reasonably effective, Council has to adapt as the evidence comes in at trial, even if that requires modifying a preferred strategy. But Councils seem to be aware of that testimony from Ms. Summers from Hayes' trial, and suggest in his opening argument that the jury should be aware that witnesses may forget things and that their police statements can then be credited. But even accounting for that, what about the risk that further cross-examination and even questioning by the government under those circumstances, if he were deemed a hostile witness, could elicit testimony about dangerous associates being in the courtroom and raise those types of concerns that might prejudice the jury against his client? Because Mr. Singleton did not testify that he had changed his testimony one way or the other because there were, quote, dangerous associates in the courtroom. Rather, he testified, I was nervous, I made a mistake. And then the Commonwealth's next question was, yesterday when you said Mr. Hayes shot first, did you recognize anyone from the neighborhood in the courtroom when you said that? To which he said yes. Then the trial judge jumps in and says, is there anyone from Mr. Rogers' family in the courtroom? To which Mr. Singleton again says yes, but clarifies that he's talking about Mr. Rogers' family being in the courtroom today, not the previous day when he said Hayes shot first. So it's only the prosecution's sequencing in question that leaves that impression with the jury. At no time does Mr. Singleton draw a connection between his testimony and the people from the neighborhood he recognized. As we know, Mr. Green was from the neighborhood, and his family had been in the courtroom the previous day. Why isn't that testimony enough to raise from Mr. Conner the specter of possible testimony about intimidation? And so that as a strategic matter, he would decide to steer clear of that. Because when counsel failed to object when the trial court began to threaten to Mr. Singleton, he allowed that testimony to come into the record in that way. Had counsel objected before the trial court threatened to imprison Mr. Singleton for continuing to testify that way, the Commonwealth was prepared to impeach its own witness, and the testimony would have proceeded that way and unfolded as the common, excuse me, as Fornesian laws tell us it should have unfolded through impeachment. So it's only as a result of trial counsel's ineffectiveness that the jury is left with that misperception. Had counsel, excuse me, had Mr. Singleton simply made a slip of the tongue and made a mistake because he was nervous, he wouldn't have recommitted to that testimony in the run-up to that impeachment that the prosecution was endeavoring to undertake until the trial court interfered. And turning to prejudice briefly, I would note that essentially all parties are in agreement that the Superior Court applied a standard contrary to Strickland's reasonable probability standard. And therefore, this Court need not defer and should not defer to the State court's decision. But for trial counsel's ineffectiveness, the jury would have had reasonable doubt as to Mr. Rogers acting in self-defense because there wasn't other evidence in the record to negate self-defense. We have the testimony of two eyewitnesses, Singleton and Summers. And I can't tell who was shooting from outside the car. Ms. Summers tells us, I can tell you who was shooting at the car. There was one person. It wasn't Mr. Rogers. It was the individual identified as Grease standing on the opposite corner. Additionally, the forensics evidence, the ballistics evidence, is entirely consistent with Mr. Rogers acting in self-defense. We have a cartridge case matching Mr. Hayes' gun found 20 feet south of another one, consistent with him driving away as he's continuing to fire at Mr. Rogers. And we also have the positioning of the cases matching Mr. Rogers' gun, which are in a northwest direction retreating away from the location that the conversation began. Well, the ballistics expert doesn't really go that far to say that he is definitely retreating, right? No. He says, assuming that the conversation began at the location that the first cartridge casing is found closest to the curb line, then, yes, he's moving in a northwest direction away backwards from the location that the conversation began. He also, Officer Stott tells us that given that Mr. Hayes was firing from the driver's seat out through the passenger side window, he would expect the casings fired from his gun to mostly fall within the vehicle, suggesting that he fired his gun more than the three times that the casings were actually found in the street. Questions? Okay. Thank you. Ms. Silverstein. Good morning, Your Honors, and may it please the Court. My name is Shoshana Silverstein from the Philadelphia District Attorney's Office on behalf of the Commonwealth. I want to start by talking about why it is we felt constrained to concede in this matter. At the core of our analysis was the trial court's improper perjury warning. In this case, the trial court told a key prosecution eyewitness after he began providing exculpatory testimony that, quote, he would be charged with perjury, that, quote, if you say that again, it is perjury, and that she would make sure he received, quote, a maximum consecutive sentence. Defense counsel made no objection. In fact, defense counsel later testified that he had no basis for an objection, despite there being long-established state law that not only showed there was a basis, but that such an objection would likely be meritorious. Could I hear the government's position on how far this goes? What if the judge had said, I'm not sure which of these is right, but they contradict each other, and saying both of them, you could be exposed to perjury? Would that be problematic? Your Honor, the state courts have not thoroughly laid out what would be exactly proper. It's certainly proper for a judge to make a witness aware of the consequences of perjury. That we do not dispute. It's in this situation where she's saying not only that there are consequences of perjury, but she's predetermined his guilt and predetermined his sentence, and that it will be the harshest sentence possible. So if the judge had said, you know, these two things contradict each other, you just need to be aware perjury is a serious felony that carries a long sentence in this commonwealth. Would you be here defending the conviction? We wouldn't have the same concerns that we have here, given that there would be some concern of influence on the content of the witness's testimony, but not at the same level. Again, here it wasn't just about the apprising the witness of the concern of perjury. This is saying not that you may have or may be affected by a perjury charge, but that I am going to make sure that you are going to be charged with perjury and sentenced to the maximum possible. These concerns were so significant, why didn't something occur at the time? Surely the prosecutor was aware of this issue and could have advised or could have come back the next day or could have taken steps during the trial. It's rather unusual to show up at this late stage, isn't it? It is, Your Honor, and we acknowledge that it's part of the concern here that nothing did occur. The trial counsel did nothing given the severity here, and we acknowledge our obligation to continue to review these cases at all stages and acknowledge when there is an issue, as the superior court did when it initially remanded the dismissal of the PCRA appeal. Even if we accept that this was error on the part of the trial judge and that counsel was operating under a misunderstanding of state law in concluding that there was nothing objectionable about the admonishment, counsel's testimony went to strategy, and we're told by McBride that where a state court has made a finding that counsel acted based on strategy, not merely a matter of negligence, that that's a finding to which we should defer. So you then and your colleague have a high threshold to get over in the double deference that's due to the state court's determination that that strategic decision was not unreasonable. How can we say that no fair-minded jurist could conclude that this was a reasonable strategy? So, Your Honor, as this court has addressed in a couple of cases, and as Strickland outlines, the strategy is as reasonable as it is, to an extent, well-informed. And here we have the counsel very clearly outlining that his strategy was not informed of the law here. And this court has recognized that it was unreasonable for a state court to give deference to counsel in, I believe it was Break Iron v. Horn, where the state court impermissibly gave counsel's reasons and strategies their explanation at face value without recognizing that it was insufficiently informed, as here. Even if counsel had a basis, it was insufficiently informed, especially given the severity of the trial court's admonishment here. And therefore, given that inadequate analysis under Strickland and under this court's, and consistent with this court's holding, deference is not owed. Don't we have here, counsel is evaluating a number of factors. There's a concern about whether there's going to be testimony about being intimidated by potentially dangerous persons who were associated with Rogers in the courtroom, on the one hand. And on the other hand, knowing the impeachment evidence that was going to come in anyway, so that Singleton's testimony really would have little value, even if he were to be pointed the finger at that point at Hayes. Again, how can we say that that is so unreasonable that where our case law tells us that counsel can make a determination and it's virtually unchallengeable about which witnesses to call? And here, he's explained reasons why he didn't want to make Singleton essentially his own witness. Certainly, Your Honor. And it comes back again to the issue of the failure to, at a minimum here, object. A lot of the current concerns about the issues across examinations and what could be elicited come back to the failure to, at a minimum, recognize that what the trial court did here was improper. That there was a concern about the influence that court could have on this witness and that that ultimately could undermine counsel's ability to cross-examine in place before the jury the witness's credibility. What was going to happen different with the objection? I'm assuming it's something like, Your Honor, I think Pennsylvania law makes clear that you can't judge. I'm not saying I've prejudged anything. I'm just writing the witness of obligation specified truthfully. I'm assuming at that point, the next day, the Commonwealth isn't going to just say, well, our case will have to go in with no one identifying the defendant here. I'm assuming they're going to elicit testimony.  Certainly, Your Honor. It's a couple of things that informed our evaluation here. First, again, is the very likely merit to the objection and under state law that there's a reasonable probability that he was entitled to some form of relief, whether he preserved the issue for appeal, again, especially given the severity of the warning or moved for a mistrial. And that is an important component of it. We also have this concern, again, about given the closeness of the case and the equivocal evidence supporting the Commonwealth's theory setting aside Singleton, especially given the testimony of, as everyone has acknowledged, a more credible witness who told the police within hours of the shooting that Hayes, in fact, shot first. Given that closeness of the case, it's our position that there's a reasonable probability of a different outcome had counsel objected through those various avenues. Kimmelman tells us that when we are considering whether there's been effective assistance of counsel, that we look to the context of the broader performance of counsel. And here, other than this misunderstanding of the law and the issues to which you've pointed, through the course of trial, trial counsel seemed to be quite effective in being a zealous advocate for his client. What weight should we give that in evaluating whether there's ineffective assistance with this one particular strategic decision? Your Honor, in Kimmelman, the court noted that, yes, that analysis of the counsel's broader performance is important, but in particular in cases where the claim rests entirely on the trial transcripts or on what happened at trial and not on other – I apologize, I see my time has concluded. May I continue? Please. And so here in Kimmelman, they actually specifically said that even where the remainder of counsel's performance is creditable, it doesn't necessarily mean that the error being evaluated here was reasonable. So especially whereas here we know counsel's reasons, he said repeatedly that he had no basis for objecting, that is core to the analysis, both under the Supreme Court's precedent and this Court's. Could you talk about the relationship? It's very confusing the way in which Strickland is supposed to be an objective standard, and yet at the same time we take into account what counsel testified. I mean, shouldn't we be hypothesizing reasons why counsel might have done this? How does the State suggest we fit those kind of instructions and intention together? Your Honor, the Court has outlined, both in Kimmelman and this Court, has discussed that where counsel has provided some kind of reason, where we know the reasons that counsel had for their actions, those are the reasons to be evaluated. Where we don't have any reasons, then you can draw from counsel's performance and hypothesize as to what the reasons could be. Where specifically have we said that? We've certainly talked about gap-filling when it comes to the State Court's reasoning, as in Dennis. But where is that analysis transposed to deal with the strategic decisions of counsel? Your Honor, in Thomas v. Varner, this Court discussed that where there is this presumption of reasonableness, and especially based on performance throughout trial, that presumption can be rebutted, especially that there was an adequately informed strategy when there is testimony as to what counsel's reasons actually were, and can show that they were unreasonable. Thank you. Good morning, Your Honors, and may it please the Court. Court appointed amicus David Park defending the District Court's judgment. After a guilty verdict, even the best trial strategies can appear flawed in the harsh light of hindsight. Petitioner certainly believed so, arguing that his counsel's strategy was constitutionally deficient. But when reviewing the whole record, counsel's strategy was not just reasonable, which is all that the law requires, but it was the best possible strategy at the time, based on the totality of the circumstances. The Superior Court agreed, and that Court's decision, based on witnesses' credibility, is afforded EPA's doubly deferential standard and also a presumption of correctness. Counsel, what effect does it have on deference that the Superior Court here was largely adopting the analysis of the PCRA Court, and that was the same trial judge that made the very error that's at issue? I don't think there's any case law precluding the same trial judge from being the PCRA Court, also sitting on the PCRA Court. I don't think there's any – there's no probative evidence that we should give to that particular thing. As to the point about the Superior Court's limited decision, that's important here. Petitioner is improperly asking this Court to consider evidence and arguments that were not before the Superior Court because of the procedural errors committed by Petitioner. And not only that, Petitioner is asking this Court to use those procedural errors as a sword and a shield, criticizing the Superior Court's decision under Section 2254d as unreasonable. Are you talking about the trial transcript? Trial transcript, yes, Your Honor, and unpreserved arguments as well. In terms of the trial transcript, wasn't the trial transcript as a result of the initial appeal already before the Superior Court? Under Pennsylvania Rules of Appeal Procedure 1931, Petitioner was required to complete three separate certified records for each of his three appeals that were taken from three different orders. And so he was required to complete a third separate certified record, and it's not true, as Commonwealth contends, that only one certified is required for all three of the different appeals that he has taken. And at the very least, this Court should not penalize the Superior Court's decision based on Petitioner's procedural errors. What if an effective assistance claim fails because his PCRA counsel was ineffective in getting the transcript? I appreciate that it's very unfortunate that his PCRA hearings counsel was ineffective, or was not as effective. But ADPA does not recognize an ineffective assistance counsel claim during a habeas proceedings, and Supreme Court precedent makes it clear that Petitioner must bear some responsibility for his counsel's... Is it your argument that the Superior Court didn't resolve the claim on the merits then as a result of this failure? No, no, Your Honor, that's not my argument. My argument is that there's no dispute that the Superior Court adjudicated the claims on the merits, and that determination was based on witnesses' credibility. What I'm arguing is that it's unfair for Petitioner to be criticizing the Superior Court's decision for lacking any independent analysis when it was Petitioner who caused the Superior Court from reviewing the trial record. Is that really so? I appreciate that the Superior Court indicated that it didn't have it before the court, but the Pennsylvania Rule of Appellate Procedure 1926b1 appears to provide that trial or appellate counsel can take on its own initiative. It can apply for modification of the record. It's certainly true that the Superior Court, through Esponte, can supplement the record, but that's entirely discretionary. The Blackletter Rule is Petitioner is required to complete the certified record, and he failed to do so here. Let's move on to the deficient performance here. I'll ask you virtually the same question I asked Ms. Silberstein. So did counsel here really make a strategic choice? Counsel said he didn't think he had a basis for objection. The only real strategy seemed to be let's let the unfavorable eyewitness testimony, the only person who would have said, you know, no, there's a different shooter. It was, you know, Hayes shot first. Is that a strategy? Is that one we should defer to given the testimony that we had? Without that, you know, obviously the government doesn't have anything that points the finger at the defendant here, Mr. Rogers. Your Honor, I respectfully disagree that counsel did not have any strategy. Counsel's stated strategy was that because Mr. Singleton was so not credible, he appeared to be lying to protect or help the petitioner, and that formed the basis for his reasonable strategy not to defend Mr. Singleton and rather to discredit him throughout the trial, which was his. My understanding is that when you impeach a witness, though, the impeaching information is not there for its substantive value. So then you've got Singleton not identifying Rogers with any admissible evidence, and you have the woman who's behind there not identifying him, so then there's nobody pointing the finger at Mr. Rogers. So how could it be better for Mr. Rogers to have, you know, to have a somewhat dodgy witness pointing the finger at him than to have no witness pointing the finger at him? I think it's important to note here that trying to convince the jury that Mr. Singleton was lying about who shot first had the same intended effect as trying to ask petitioner's preferred strategy of trying to convince the jury that it was Mr. Hayes who shot first, his inconsistent testimony. Why did he have to do that at the point of the objection? I guess I'm sort of not following the logic. You started off by saying that this was the best possible strategy. Trial testimony unfolds, and suddenly Mr. Singleton says that Mr. Rogers didn't do it. Okay. That seems like not a bad moment in the day of a defense attorney, right? But why not let that play out? Perhaps the prosecution walks away entirely. Perhaps the prosecution can't figure out what to do with Mr. Singleton's testimony. I understand your point, in other words, that at some point it may get into this difficult issue of having to discredit or credit Mr. Singleton and figure that out. But at that moment of the objection, wouldn't you say, Your Honor, let's just hold off here? I'm not sure we can go that far in admonishment and see what happens next. I think it's because it's much easier to convince the jury that a witness is lying about something rather than defending that person as telling the truth. When everyone at trial was calling that witness a liar, a criminal, even a little devil as the prosecution called its own witness, it was a much more effective strategy to call Mr. Singleton a liar rather than defend his inconsistent testimony. Because as an experienced attorney, Mr. Rogers' counsel have observed many witnesses lie on the stand and believe his testimony was so not credible that no one would believe him, that it was inevitable that prosecution would impeach Mr. Singleton even after he had objected. Isn't the point that it makes him infinitely less credible if he is allowed to recommit to and give some explanation for his decision once Hayes has been acquitted to acknowledge that Hayes was in fact the shooter? You seem to be presenting the options of either he has to defend the credibility of Singleton or he can call Singleton a liar, but doesn't he have a much stronger basis to say, you jury can't believe anything that this witness has said? He's even switched his testimony on the most critical point of the government's own case. And he's deprived himself and his client of his ability to do that by not objecting, not cross-examining. I mean, isn't that really the crux of the problem, not that he decided to forego the alternative of defending the witness? I'm not suggesting, Your Honor, that that would not have been a reasonable strategy, but it doesn't make counsel's actual strategy unreasonable. It's perfectly a reasonable strategy to stay consistent with your opening statement promising the jury that you were going to discredit everything that Mr. Singleton was saying, and also that there are some risks with adopting Mr. Singleton. It was important for trial counsel to discredit everything that Mr. Singleton was saying, including the incriminating testimony about Petitioner as the initial aggressor and his testimony about the prior incident where Mr. Rogers shot at Mr. Hayes a couple months ago in the same exact location. And so it was a better strategy just to avoid all the messiness and the litigation risks that came with defending Mr. Singleton. Moreover, Your Honor, before we even get to the de novo review, as a threshold matter, EPA's doubly deferential review applies to the superior court's determination based on the witness's credibility. As I heard Your Honor, Judge Krause, ask the question whether doubly deferential review applies here, I heard counsel respond no because counsel's performance was deficient. But that's a Strickland analysis. That is applying de novo review before applying EPA's deference. Under Section 2254D, Petitioner must prove that no fair-minded jurist could have reached the superior court's decision applying Strickland based on witness's credibility. Petitioner ignores this highly deferential standard entirely because he cannot meet it. And not only that, the superior court's credibility findings are presumed correct here under Marshall v. Longberger and Bickers v. Superintendent Gritterford, which is an opinion authored by Judge Krause in 2017. And because superior court's decision was based on witness's credibility, this court must give that decision near apex deference under Sexton v. Boudreaux. So his petition certainly fails under Section 2254D. So what we have here among the many sort of brain twisters in this case, you know, for which we are especially appreciative that we have, you know, three excellent counsel and your assistance, Pro Bono, we have here in evaluating whether a fair-minded jurist could disagree about performance or if we reach the question of de novo performance, part of that calculation, it seems to me to be informed by the fact that we have here a single witness, the importance of singleton as a witness, because he's the only person who's saying that Rogers shot first. That is also the heart of the question of prejudice. So I guess my question to you is when we are thinking about how to evaluate at the outset, the threshold question about the state court's determination, or if we reach a question of de novo assessment of counsel's performance, what weight, if any, at that stage should we give the fact that this witness was so very important that it could make or break the case to further detract from his credibility? I think because Mr. Singleton was prosecution's only witness testifying that it was Mr. Rogers who shot first, it was certainly a reasonable decision for him to discredit his entire testimony, including the testimony that it was Mr. Rogers who shot first, by effectively cross-examining Singleton for the four different accounts of where Mr. Hayes' gun was located during the shootout. It's also important to note, for prejudice purposes, that Superior Court's decision based on... Superior Court's prejudice finding was again based on Mr. Singleton's credibility, which is again presumed correct under Vickers. It's also important to note that it didn't matter who shot first in the end, because Mr. Singleton testified that Petitioner was the initial aggressor who predatorily approached Mr. Hayes with an unlicensed gun to rob him for $6,000. Singleton also testified that Petitioner pulled out his gun first and pointed at Mr. Hayes. It's also important to note that this is not supported in the record. This testimony can be found at Joint Appendix 193 during Petitioner's trial. It's also supported during Mr. Hayes' trial at Joint Appendix 56. And this was in the PCRA Court's fact findings at 303... 380, excuse me, and the Superior Court's affirmance of that finding at Joint Appendix 606, which is again presumed correct under Vickers. And so what the jury heard was that Petitioner, who had already violently... who already had a violent history of shooting at Mr. Hayes a couple of months ago in the same exact neighborhood, tried to rob Mr. Hayes for $6,000 and pointed out his gun at Mr. Hayes. No jury listening to this evidence could have possibly have found that Petitioner was acting in self-offense when he murdered... innocently murdered a bystander. Any way you look at it, there was just no prejudice here. But again, if you take out the credibility of Singleton as to those... any aspect of his testimony, you undermine it even further, because he's now done an about-face from his testimony just one week earlier. Then in terms of arguing that there wasn't prejudice, aren't you just left with the ballistics? But the ballistics expert says... at least says that the casings and their placement is consistent with Rogers backing away, not moving forward as an aggressor. So how could there not be prejudice if you assume, for the purposes of this question, that Singleton's testimony has been further and significantly undermined? I don't think that... first of all, the superior court's credibility determination is presumed correct here under Vickers, and so to rebut that presumption, Petitioner has to show, with clear and convincing evidence, that the superior court's decision was incorrect or unreasonable. And I don't think we get there with the evidence that Petitioner is presenting. And so it's very difficult to overcome superior court's determination that there was no credibility... that Singleton's inconsistent testimony would have been believed by the jury, even if he had maintained that inconsistent testimony. I do agree that the ballistics evidence is not as strong, but again, I think because of Petitioner's procedural errors, this Court is prevented from reviewing the trial record to rebut that. But you don't defend the, you know, Peace Area Court articulation of the Stickland prejudice standard, right? I do think there is at least some ambiguity as to whether or not the superior court has correctly applied this prejudice standard. It appears to be articulated more likely than not standard, which is not the correct standard, and so we can't defer to it. Even if that's true, Your Honor, I do think that Petitioner's claim fails under a Danova review, that there was no prejudice here. Unless Your Honors have further questions? No. Thank you, Your Honors. I'd like to briefly respond to Amica's suggestion that it made no difference how Mr. Singleton testified, because he had also already testified that Mr. Rogers had been the initial aggressor. He didn't testify that Mr. Rogers was the initial aggressor. That's a legal determination. What he testified was that Mr. Rogers purportedly said $6,000 or it's on. On direct appeal, the superior court held that the Commonwealth had demonstrated that Mr. Rogers was the initial aggressor through the testimony that Mr. Singleton said Mr. Rogers had shot first. So clearly the superior court understood the question of who the initial aggressor was to hinge on the question of who shot first. Amica cites one unpublished superior court decision for the proposition that the general statement, $6,000 or it's on, is sufficient to make Mr. Rogers the initial aggressor. However, in that case, the defendant not just made a general verbal statement, but was on a, quote, rampage and wielding a knife. I would just note that far from being ambiguous, the superior court's articulation of the prejudice standard was explicitly in a rejection of the reasonable probability standard. The superior court held that the standard it was applying far exceeded the reasonable probability standard. And the presumption that Amica's references from Woodford versus Viscotti is rebutted by a clear indication to the contrary. And if this isn't a clear indication that the superior court did not know or follow the law, I'm not sure what, if anything, could satisfy that standard. Let's look at, let's assume we're on de novo review for prejudice. Mr. Park pointed to the earlier incident where Rogers had allegedly shot at Hayes before. How does that factor into the prejudice analysis? It certainly, in the record, I don't believe that it at all changes the calculus in terms of who shot first. I think the Commonwealth Defense Council and the trial judge and the superior court all recognized that the dispositive question in this case really was who shot first. There clearly was a history between Mr. Hayes and Mr. Singleton and Mr. Rogers, but that doesn't fundamentally alter the central question in this case was who shot first. And I see that my time is up. Thank you. All right. Thank you. We appreciate, as I said at the outset, a really excellent briefing as well as argument today. We thank Mr. Park and his firm for their service to the court in serving as amicus in this matter. And we will take the case under advisement.